IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                              CRIMINAL ACTION NOS. 5:05CR63-01 and
                                                                     5:05CR63-02
                                                       (JUDGE STAMP)

LANCE D. YOUNG and
SONNY R. BAXTER,

      Defendants.

## REPORT AND RECOMMENDATION RE: MOTIONS TO SUPPRESS

### I. Introduction

A.    Background.

Defendants are the only defendants in a five count indictment plus a forfeiture claim related to distribution of heroin, crack cocaine and related firearm counts.

B.    The Motions.

    1.    Defendant Lance D. Young's First Motion to Suppress.[1]

    2.    Defendant Lance D. Young's Second Motion to Suppress.[2]

    3.    Defendant Sonny R. Baxter's Motion to Suppress Statements.[3]

    4.    Defendant Sonny R. Baxter's Motion to Suppress Physical Evidence.[4]

---

[1] Doc. No. 28.

[2] Doc. No. 34.

[3] Doc. No. 21.

[4] Doc. No. 22.

5. Defendant Sonny R. Baxter's Motion to Suppress Text Messages and Information from a Seized Motorola Cellular Telephone.[5]

C. Recommendations.

1. I recommend Defendant Lance Young's First Motion to Suppress be **DENIED** because the searches and seizures of the premises were pursuant to an unlimited, valid consent by the only lessee.

2. I recommend Defendant Lance Young's Second Motion to Suppress be **DENIED** because the searches and seizures of the premises were pursuant to an unlimited, valid consent by the only lessee.

3. I recommend Defendant Sonny R. Baxter's Motion to Suppress Statements be **DENIED** because <u>Miranda</u> warnings are not required when a person is questioned in a <u>Terry</u> stop.

4. I recommend Defendant Sonny R. Baxter's Motion to Suppress Physical Evidence be **DENIED** because there was a basis for a <u>Terry</u> stop and a person may be frisked and a limited search conducted.

5. I recommend Defendant Sonny R. Baxter's Motion to Suppress Text Messages and Information from a Seized Motorola Cellular Telephone be **DENIED** because exigent circumstances existed since the text messages and last ten phone numbers received could be lost.

II. Findings of Fact

A. The Searches, Seizures and Statements.

---

[5] Doc. No. 33.

On August 23, 2005, Detective Robert W. Connors of the Hancock County, West Virginia Sheriff's Office, received a telephone call from Agent Walker, a Columbiana County, Ohio, drug investigator. Walker had talked to Marlana J. Grose about her drug activities. Ms. Grose advised Walker, among other things, that she was involved with Defendant Young related to drug activity in Hancock County, West Virginia. Grose was seeking in East Liverpool, Ohio, a protective order from telephone harassment by Defendant Young and a domestic violence order against Defendant Young. The next day Connors met with Grose for an interview which was arranged by Walker. Grose came to the interview with one of her parents. Grose came from Ohio for the interview. Grose gave Connors a contact number on a cell phone with a Columbiana County, Ohio, telephone number. Connors took certain background information. Grose was currently living with her parents in East Liverpool, Ohio. Grose told Connors about her relationship with Defendant Young. Grose and Young began dating in January, 2005, and lived together in hotel rooms. Grose leased (Government Ex. 2) an apartment at 411 Chester Newell Road, Chester, West Virginia, in late April, 2005, where she and Defendant Young lived together. Grose and Young each paid one-half the rent. The source of the rent money was from the sale of drugs. Young would give Grose his one-half of the rent and Grose would get a money order in her name to send to the landlord. Rent was paid monthly. The last payment was July 15, 2005. The rent due for August 15, 2005 was not paid. This apartment in Chester, West Virginia, was the premises searched which is the subject of the Motions to Suppress. During this time, Defendant Young brought drugs from New Jersey and sold them to people from East Liverpool, Ohio, for distribution there. The apartment was used to package bulk drugs into packages for retail distribution. Firearms were kept in the apartment by

Defendant Young. While Young lived at the apartment, he did not sign the lease. Young was on parole from the state of New Jersey and was not authorized to leave the state of New Jersey.

In late July, 2005, Grose and Defendant Young had a fight and Grose vacated the apartment. She was pregnant with Defendant Young's child and Defendant Young had threatened her. She moved to her parents' home in East Liverpool, Ohio. She removed her clothes from the apartment at that time, but she still had some furniture and bath items in the apartment. The last payment on the lease by Grose was in July, 2005. Grose gave Connors a consent (Government Ex. 1) to search the apartment at the interview. Later that day, Grose gave a copy of the lease to the law director in East Liverpool, Ohio, who faxed a copy of the lease to Connors. Grose was meeting with the law director about the telephone harassment and domestic protective order charges against Defendant Young. Grose had a key to the apartment and arranged to have it given to Connors. Connors attempted to contact the landlord but was unsuccessful. As of August 26, 2005 landlord Grimes had not terminated the lease or taken action to evict Grose from the premises and Grose had not given landlord Grimes notice that she was quitting the premises or terminating the lease. Grimes believed the lease was still in effect.

On August 24, 2005 Connors and several other officers (Detective Walker, Officer Gettings, Chester, West Virginia Police Officer Hissom (both spelled phonetically), and Deputy Stanley went to the apartment to execute the consent to search. After knocking at the door of the premises and having no response, the officers entered the premises. The search was conducted and a list of items seized, including cash, heroin and firearms, was made (Government Ex. 3). On August 25, 2005, Connors obtained a warrant for Defendant Young's arrest. Investigating further, Connors learned Defendant Young was on parole from the state of New Jersey (Government Ex. 4). Connors called

4

Grose and advised that the search was conducted and items were seized. Connors told Grose that if Defendant Young returned and found his property missing he may suspect her. Grose consented to Connors retaining the key for further entry. Grose also wanted the key given to the Chester Police Department to accompany her when she came over to secure return of her household goods. Connors obtained a picture of Defendant Young from the New Jersey Parole Department web site. The refrigerator was not large enough to hide Defendant Young.

On August 25, 2005, Connors talked to landlord Grimes. Grimes advised Grose was the only lessee. The last payment made on the lease was for the period July 15, 2005 to August 14, 2005. On August 25, 2005 Grimes called Grose about the past due rent at a cell phone number she gave him. Defendant Young answered the phone. Defendant Young asked if he could call Grimes back. Grimes said yes. Young called back later. The caller i.d. on the cell phone displayed the name Sonny Baxter. Grimes told Defendant Young the rent was past due. Defendant Young indicated he might like to continue staying in the apartment for the weekend or another month. Grimes told Defendant Young he could stay in the apartment if he signed a lease and paid the rent. Defendant Young asked Grimes if Grimes had been in his apartment and taken some of Young's things. Grimes replied that he had not been in the apartment or taken any of Young's belongings.

On August 26, 2005, a Chester, West Virginia, police officer noticed lights on in the apartment and the blinds were down. After the search on August 24, 2005, the blinds were up and the lights were off. Later that day, Defendant Young and another male were seen entering the premises.

Hancock County Deputy Sheriffs McGaffick, Keeder, and Stanley and Chester, West Virginia, Police Officer Hissom, entered the premises to see if there was evidence someone had

entered the premises. Deputy Stanley seized one item he found in the refrigerator. (Item 1, Government Ex. 5).

About one hour later after being advised Defendant Young was back at the apartment, Hancock County, West Virginia, Deputy Sheriffs Keeder, McGaffick, Stanley, Robinson, and Sgt. McDonald, and Chester, West Virginia, Police Officer Hissom approached the apartment. Keeder was first in line at the door and observed two black males to the right of the door near a small table. One of the men appeared to be Defendant Young. Keeder knocked and announced. One of the men said "hold on". The two men went past the doorway toward the bedroom where the weapons had been found two days earlier. The door was kicked down. The officers entered the premises. McGaffick was immediately behind Keeder. Young was encountered first and McGaffick, took control of Young. Keeder took control of the unknown black male. Both men were ordered to the floor, cuffed, patted down and searched. The pat down and search of Young yielded baggies and money. The pat down and search of the unknown male yielded a cell phone and a pack of gum from the right pants pocket. The initial pat down revealed a hard object. Keeder did not know what it was. Keeder said it could have been a gun. Defendant Young was arrested and the unknown male was detained for officer safety. While the two subjects were being subdued, cuffed, patted down and searched, Sgt. McDonald entered the apartment. He observed an opened over-the-counter pain killer on the table. As he went to pick up one of the capsules out of curiosity. It rolled under a radio or toaster. He picked up a roll of paper towels looking for the capsule and a small package fell out. The small package was a clear plastic bag or plastic wrap folded up containing a light tan powdery substance. The substance appeared to be heroin. The two persons were taken outside. The unknown male was asked his name when detained outside the apartment. The unknown male said

6

his name was Sonny Callaway. A driver's license check was made in the name of Sonny Callaway. The driver's license check came back with no match. Keeder was trying to determine the unknown male's true identity. Keeder called Connors. Connors called back and told Keeder to ask the unknown male if his name was Sonny Baxter. Keeder asked the unknown male if his name was Sonny Baxter. The unknown male then admitted his name was also Sonny Baxter. Defendant Baxter was arrested. Defendant Baxter was not advised of his <u>Miranda</u> rights at any time while at the apartment. Defendant Baxter was then arrested for lying to a police officer. Both defendants were transported to the sheriff's office. Defendants were advised of their <u>Miranda</u> rights at the sheriff's office. After being advised of their rights, both defendants refused to answer questions. Connors made a list of items seized during the arrest of defendants Young and Baxter (Nos. 2-11, Government Ex. 5).

The seized cell phones were on when taken from the evidence bag by Connors. Connors reviewed the cell phones and wrote down the text messages he was able to see. (Government Ex. 6).

On September 2, 2005, Connors and landlord Grimes went to the premises at Grimes' request for Grimes to give a statement. Connors walked around the unit while Grimes examined the premises. Connors seized certain items he found in plain view. (items 13-19, Government Ex. 5). Items 14 through 19 were found under and in clothing that was in the premises.

  B. <u>The Motorola V3 Cellular Telephone Known as The Razor</u>.

The Razor is an advanced, high-end cell phone offered by the Cingular Cell Phone Company. It has a phone, a camera, calculator, alarm, calendar, address book, and text messaging among its features. It has a wireless technology for synchronisation of the calendar and address

7

book with a computer. The Razor automatically saves text messages. The Razor has a memory alert function that indicates when the memory is almost full. The Razor also has a memory meter function which allows the user to determine how full the memory is. The Razor has an archive function and stores a text message in the phone so it can't be deleted. It would take at least one week to fill the memory of the text message in box. The phone would give a notice when it was about out of memory. The phone will not lose saved text messages if it is turned off, the battery runs down or the phone is dropped. Voice mails are saved on the Cingular system. The Razor can store 500 telephone numbers. Battery strength is shown by bars on the screen display. The Razor call log automatically saves the last ten numbers called and the last ten numbers received. Billing records contain all numbers called and received. The Razor has an option called message cleanup that wipes away text messages between one and 99 days. One cannot know the set ups by looking at the phone screen. If the one day message cleanup is chosen, the message will be erased at midnight on the day following the day it is received.

### III. Conclusions of Law

Defendant Young has standing to challenge all the searches of the premises at Unit 2, 411 Chester-Newell Road, Chester, West Virginia, because he was occupying those premises in their entirety which created an expectation of privacy in the premises.

Defendant Baxter did not have standing to challenge any search of the premises at Unit 2, 411 Chester-Newell Road, Chester, West Virginia, because there was no evidence that he ever occupied the premises there or had any expectation of privacy in the premises.

Defendants Young and Baxter both had an expectation of privacy in the items seized from their persons, including the cell phones and their contents.

IV. The Motions to Suppress Except the Search of the Cell Phones

A. Contentions of the Parties.

Defendants contend the consent to search given Connors by Grose is not valid because Grose had abandoned the premises prior to the execution of the consent. Defendants also contend the description of the items to be seized in the consent is so vague and so broad on its face that renders the consent invalid. Defendants contend that this consent given prior to the August 24, 2005, search is invalid and that since all the subsequent searches and seizures were derivative from the August 24, 2005 search and seizures that all subsequent searches and seizures are invalid. Defendant Baxter contends he was an overnight guest at the premises prior to the August 26, 2005 search, and therefore, he has standing to contest the validity of that search. Finally, Defendants contend that the presence of Ohio law enforcement officer Walker at the August 24, 2005 search constitutes the presence of a civilian present at the search which invalidates the search.

The Government contends it had a valid consent to search the premises. The Government also contends that the searches of the Defendants' persons were valid as incident to a lawful arrest. Finally, the Government contends that the searches related to Defendant Young who was on probation from the State of New Jersey, are valid because a parolee has a greatly reduced expectation of privacy and is subject to warrantless searches of his residence and person.

B. Discussion.

1. The August 24, 2005 Search of the Premises.

To challenge a search under the Fourth Amendment, a defendant must have an expectation of privacy. Rakas v. Illinois, 439 U.S. 128, 143 (1978). Defendant Young was living

9

at the premises. Defendant Young had an expectation of privacy in the premises searched. Defendant Young has standing to challenge this search. There was no evidence that Defendant Baxter was living in the premises prior to this search. Defendant Baxter has no standing to challenge this search.

While warrantless searches are generally prohibited (Katz v. United States, 397 U.S. 347 (1967)), a search pursuant to a valid consent is a well recognized exception. Schneckloth v. Bustamonte, 412 U.S. 218 (1973). A third party with apparent authority over premises may consent to its search. United States v. Matlock, 415 U.S. 164, 170 (1974). Even if a person does not have authority to consent, the search will be upheld if the officer reasonably believes the third party has authority to consent. Illinois v. Rodriguez, 497 U.S. 177 (1990). The scope of consent to search is what a reasonable person would understand it to be. Florida v. Jimeno, 500 U.S. 248 (1991). Here the scope is defined by the written consent. There were no limitations in the consent as to parts of the premises to be searched or objects to be seized. United States v, Johnson, 52 F.3d 322 (4th Cir. 1995). One question as to the August 24, 2005 search is whether Grose had authority to consent as the tenant or she lacked authority because she abandoned the premises. Grose retained a key. Grose visited the premises without restriction after she took her clothes and went to live with her parents. Defendant Young put no restriction on her returning to the premises. Although late with the August rent, the landlord believed Grose was still the tenant and the only tenant. The landlord knew Young lived at the premises. The landlord called the number Grose gave him to collect the past due rent. Young answered. The landlord told Young that if Young wanted to continue to stay at the apartment he must sign a lease and pay the rent. A law enforcement officer does not have to bring an action to quiet title before determining who has the right to consent to a search. Wayne R. Lafave, Search

and Seizure, at a treatise on the Fourth Amendment §§ 8.3(g)(4th ed. 2004). Connors obtained a copy of a lease showing Grose to be the only tenant. Connors acted reasonably. Grose had the authority to give the consent and the consent was valid.

Two issues remain. The Government contends Young has a reduced expectation of privacy as a parolee. This is true but under these facts, Defendant's status as a parolee was not a basis for a warrantless search of the premises on August 24, 2005. Defendant Young contends the search is not valid because an Ohio law enforcement officer (Walker) who had no authority to act in West Virginia, was present during the search. Defendant Young contends Walker was a private citizen, and therefore, the search is invalid under Wilson v. Layne, 526 U.S. 603 (1999). Wilson is a Bivens and 1983 case in which the homeowner brought an action against the state and federal officers who brought a reporter into their home during a search. It does hold that bringing a private person to a search violates the Fourth Amendment. In Wilson, it was a reporter who had nothing to do with the law enforcement function. Here it involves a law enforcement officer from another jurisdiction who was investigating Defendant Young's illegal activities in his district. Further, Walker provided the information from Grose to Connors that was the basis for the consent search. It was not inappropriate for him to be there. This was a legitimate law enforcement reason for Walker to be present as is recognized in Wilson and is not a violation of the Fourth Amendment.

  2.  The August 26, 2005 Search of the Premises.

The only difference on the standing issue is that there was evidence that there was some evidence that clothing belonging to Defendant Baxter was at the premises. However, there was no evidence that Defendant Young lived at the premises or had even been an overnight guest. Therefore, Defendant Young also does not have standing as to this search of the premises.

The issue of consent to search is the same as to the August 24, 2005 search. As explained above, the consent to search was valid.

3. The August 26, 2005 Search of Defendant Young.

The officers had obtained a warrant to arrest Defendant Young. This warrant was based on the results of the valid consent search of August 24, 2005, and therefore, it is not "fruits of the poisonous tree". Searches incident to an arrest are a well established exception to the warrant requirement. Michigan v. Defillippo, 443 U.S. 31, 35 (1979). The officers had the right to enter the premises occupied by Defendant Young to execute the warrant when the officers saw Young inside. Payton v. New York, 445 U.S. 573, 602-03 (1980). The officers had a right to search Defendant Young pursuant to the arrest for the protection of the officers from weapons and to prevent the destruction of evidence. Knowles v. Iowa, 525 U.S. 113, 116 (1998). The search of Young was necessary and valid.

4. The August 26, 2005 Search of Defendant Baxter.

There was no warrant for the arrest of Baxter and the officers did not know who he was when he was found in the premises with Defendant Young. The officers were lawfully in the premises executing the arrest warrant for Defendant Young. Since the officers did not know who Young was but found him in the premises with a person they had information was selling illegal narcotics, there was a reasonable suspicion based on the articulable facts they knew about Young that criminal activity was afoot. Therefore, there was a basis for an investigative stop of Baxter. Terry v. Ohio, 392 U.S. 1 (1968). Since there was a basis for an investigative stop, there was a basis to conduct a frisk and limited search for weapons. United States v. Hensley, 469 U.S. 221 (1985). One must conclude under these facts that the search of Defendant Baxter was lawful.

5. The August 26, 2005 Statements of Defendant Baxter.

After the stop and frisk of Baxter, the officers asked his name. Baxter replied his name was Sonny Callaway. A driver's license check on the name Sonny Callaway did not provide a match. The officers continued to question Baxter about his name. Baxter contends that his responses to this continued interrogation while he was stopped and not free to leave must be suppressed. Miranda v. Arizona, 384 U.S. 436 (1966). Miranda warnings are not required when a person is questioned during a Terry stop. United States v. Leshuk, 65 F. 3d, 1105, 1108-08 (4th Cir. 1995).

C. Recommendations.

For the foregoing reasons stated in the foregoing discussion, I recommend that none of the Motions to Suppress be granted.

IV. The Search of the Cell Phone for Text Messages

A. The Contentions of the Parties.

Defendant Baxter contends that the cell phones were the fruits of the poisonous tree because they were seized as a result of an unlawful warrantless search on August 24, 2005. Defendant Baxter further contends that even if the cell phones were lawfully seized, that a search warrant was required prior to obtaining the information from the cell phones such as the names and telephone numbers in the address book and the saved text messages.

The Government contends that a seized cell phone is no different from a seized address book and that the Government has a legitimate right to preserve evidence taken from the person of someone who is arrested.

B.  <u>Discussion</u>.

The issue of the original warrantless search of the premises was discussed above. Therefore, the fruits of the poisonous tree argument is not discussed here because it is not applicable.

The facts presented on this issue are interesting. The names and addresses in the Razor cell phone would be preserved and not deleted by the passage of time, the turning of the cell phone off and on or the battery dying. On the other hand, the text messages would be automatically deleted after a specific time set by the owner. Also, only the last ten phone numbers called and received are preserved. The shortest period of time text messages were erased would be one day defined as midnight of the day following the day the text message was received. The period could be much longer (up to 99 days) than that if chosen by the owner. However, one who did not know the specifics of the Razor cell phone could not tell the length of time the cell phone would preserve messages from looking at the cell phone screen. Therefore, the text messages which may or may not contain evidence of a crime, could be lost in a relatively short time if not preserved in some fashion. Also, the last ten phone numbers received could be lost if new calls were made.

As both counsel point out, there is no specific law in the Fourth Circuit on the search of cell phones which are seized. The only case that is somewhat similar involves the search of a pager which held the numbers on a pager could be obtained without a search warrant incident to a lawful arrest. <u>United States v. Hunter</u>, 1998 Westlaw 887289 (4th Cir. 1998). Neither counsel provided any cases involving cell phones because there are none in the Fourth Circuit.

There were only two cases involving searches of cell phones without a warrant which I could find. <u>United States v. Morales-Ortiz</u>, 376 F. Supp. 2d 1131 (d.n.m. 2004) held that contents of cell phone and pager were admissible under the inevitable discovery doctrine pursuant to a

14

subsequently obtained search warrant even though the phone and pager were unlawfully searched. That case implies one needs a search warrant to get the contents of a cell phone. However, its facts are different because a search warrant was subsequently obtained. That was not the situation in the case at bar. The other case, United States v. Parada, 289 F. Supp. 2d 1291, held that phone numbers stored in memory of cell phone lawfully seized and subject to being lost as a result of incoming phone calls could be retrieved without a warrant because of exigent circumstances. That appears to be similar to the case at bar because the text messages would be automatically deleted at some unknown future time. Also, the last ten phone numbers for calls received would be erased if new calls were made to that telephone. It was impossible for the officers to know this by looking at the phone screen and not knowing how to manipulate the cell phone. Since the deletion of text messages could be as soon as midnight the next day, it would seem exigent circumstances existed that evidence could be lost if not retrieved immediately without the benefit of a search warrant.

    C.    Recommendation.

For the foregoing reasons, I recommend the text messages retrieved from the cell phone not be suppressed.

Because the trial is set for April 5, 2006, any objections to this Report and Recommendation must be filed by **Wednesday, March 29, 2006,** in writing with the Clerk of the Court identifying the portions of the Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Frederick P. Stamp, Jr., United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation.

The Clerk of the Court is directed to provide a copy of this Report and Recommendation to parties who appear pro se and all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

DATED: March 23, 2006

/s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE