IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

      Plaintiff,

v.                      Criminal Action Nos. 5:05CR63-01-02
                                          (STAMP)
LANCE D. YOUNG and
SONNY R. BAXTER,

      Defendants.

**MEMORANDUM OPINION AND ORDER**
**AFFIRMING AND ADOPTING REPORT**
**AND RECOMMENDATION OF MAGISTRATE JUDGE**

I. Procedural History

On December 8, 2005, Lance D. Young ("Young") and Sonny R. Baxter ("Baxter") were named in a six-count indictment. Young is charged with conspiracy to distribute narcotics, possession with intent to distribute narcotics, aiding and abetting the possession with intent to distribute narcotics, and possession of a firearm in relation to a drug trafficking crime. A criminal forfeiture allegation is also included in the indictment. Baxter is charged with conspiracy to distribute narcotics, and aiding and abetting the possession with intent to distribute narcotics. A criminal forfeiture allegation is also included in that indictment.

In January 2006, Baxter filed a motion to suppress statements, motion to suppress physical evidence, motion to suppress text messages and information seized from a Motorola cellular telephone. Young filed a first motion to suppress and a second motion to

suppress.  The government filed a response to the motions and Young filed a reply, styled as a responsive pleading.

On March 23, 2006, United States Magistrate Judge James E. Seibert filed a report recommending that: (1) Young's first motion to suppress be denied; (2) Young's second motion to suppress be denied; (3) Baxter's motion to suppress statements be denied; (4) Baxter's motion to suppress physical evidence be denied; and (5) Baxter's motion to suppress text messages and information from a seized Motorola cellular telephone be denied.

Magistrate Judge Seibert informed the parties that if they objected to any portion of this report, they must file written objections within ten days after being served with copies of his report.  Young and Baxter filed timely separate objections to the report and recommendation on March 29, 2006.

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court must conduct a <u>de novo</u> review of any portion of the magistrate judge's recommendation to which objection is made.  As to those portions of a report and recommendation to which no objection is made, a magistrate judge's findings and recommendation will be upheld unless they are "clearly erroneous."  Because objections have been filed, this Court has made an independent <u>de novo</u> consideration of all matters now before it, and is of the opinion that the magistrate judge's report and recommendation should be affirmed and adopted.

## II. <u>Facts</u>

On August 23, 2005, Agent Troy Walker ("Agent Walker"), a Columbiana County, Ohio drug investigator, telephoned Detective Robert W. Connors ("Detective Connors") of the Hancock County, West Virginia Sheriff's Office to advise Detective Connors that he had received a telephone call from Marlana J. Grose ("Grose"). Grose had discussed with Agent Walker certain drug activities occurring in Hancock County, West Virginia. Grose advised Agent Walker, among other things, that she was involved in drug activities with Lance D. Young ("Young"). The following day, Agent Walker arranged an interview between Detective Connors and Grose in Hancock County.

In the interview, Grose provided the following information to Detective Connors. In April 2005, Grose leased an apartment at 411 Chester Newell Road, Chester, West Virginia ("the premises"). (Gov't's Ex. 2.) Grose described the layout of the premises and stated that Young confided to her that he was on parole and "[t]hat he wasn't allowed to leave [the state of New Jersey]." (Hr'g Tr. ¶ 19 at 7, Mar. 1, 2006.) Young was residing with Grose, and while his name was not on the written lease for the premises, he and Grose split the rent on a monthly basis. Each month Young provided Grose with one-half of the rent and Grose would obtain a money order in her name to give to the landlord, Dennis Grimes. Grose stated that the rent was paid from drug proceeds. (Hr'g Tr. at 8.) Grose had access to all areas of the premises, including a key to

the lockbox. Neither Grose nor Young received mail while residing at the premises. Grose's mail went to her parent's residence in Ohio.

Grose also stated that Young conducted an assembly-line-type operation at the premises in which he weighed, cut and packaged bulk heroin into street level quantities or individual stamp bags to be sold throughout East Liverpool, Ohio, across the Ohio River from Hancock County. She also advised Detective Connors that there was "a shotgun and a pistol that were kept between a mattress and box springs by Mr. Young, that he had . . . acquired . . . from New Jersey." (Hr'g Tr. ¶ 4-7 at 18, Feb. 9, 2006.) Grose stated that she left the premises in late July 2005 because she was concerned for her safety. Even though she moved back to her parents' residence, Grose left some items at the premises such as a television, a bed and an entertainment center. These items belonged to both Young and Grose. Grose also left towels and shower supplies that belonged solely to her.

Young, Grose and the landlord each had a key to access the premises. (Hr'g Tr. ¶ 25 at 36, Mar. 1, 2006.) Grose located and kept her key to the premises.[1] Grose returned to the premises on several occasions in August 2005.

---

[1]Grose found her key to the premises in her car after she had moved back to her parents' home in late July 2005. The key was her primary key to the premises, not a duplicate.

The last rental payment was made on July 15, 2005. The next payment was due August 15, 2005, but was never paid. Grose did not inform the landlord that she was terminating the lease.

On August 24, 2005, Grose signed an open-ended consent to search the premises. (Hr'g Tr. Gov't's Ex. 1, Feb. 9, 2006.) Later that day, Grose gave a copy of the lease agreement to the law director in East Liverpool, Ohio, who faxed a copy of the lease agreement to Detective Connors. Grose also provided Detective Connors with her original key to the premises. Detective Connors attempted, unsuccessfully, to contact the landlord. As of August 26, 2005, the landlord had not terminated the lease or taken any action to evict Grose from the premises.

On August 24, 2005, Detective Connors and several other officers went to the premises to execute the consent search. After knocking on the door without success, the officers entered the premises. The officers searched the premises and seized cash, heroin, firearms and an empty firearm case. (Hr'g Tr. at 25.) The firearms and the empty firearm case were seized from the bedroom. The officers searched for but could not find the missing firearm. When the officers left the premises on August 24, 2005, the blinds in the premises were up and the lights were off.

On August 25, 2005, Detective Connors was advised by the landlord that Grose was the only lessee and that the last rental payment made on the lease was for the period of July 15 to August

14, 2005.  The landlord further stated that he had tried to call Grose's cell phone to inquire about the rent and instead had talked to Young.  Young called the landlord back that same day to state that he would be interested in possibly renting the apartment but that he would not be able to discuss this until later that week.  The landlord told Detective Connors that when Young had called him the name on the caller identification was Sonny Baxter.  (Hr'g Tr. ¶ 14 at 31.)  The landlord told Detective Connors that this conversation took place after August 24, 2005.

On August 26, 2005, a Chester, West Virginia police officer noticed that the lights were on in the apartment and the blinds were down.  Later that day, Young and another male were seen entering the premises.  Hancock County Deputy Sheriffs McGaffick, Keeder and Stanley and Police Officer Hissom of Chester, West Virginia entered the premises to determine whether someone was in the premises.  There were no persons at the premises.  However, during the search, Deputy Stanley seized a large baggie filled with white powder that was found in the refrigerator.[2]  (Hr'g Tr. Item 1, Gov't's Ex. 5.)  After seizing the bag, the officers left the premises.

About an hour later, Young and another male returned to the premises.  Deputy Sheriffs Keeder, McGaffick, Stanley, Robinson,

---

[2]The large baggie found inside the refrigerator was tested for cocaine.  The first test was positive.  However, it was later determined not to be cocaine.

Sgt. McDonald and Officer Hissom approached the apartment. Sheriff Keeder went to the door first and observed two black males to the right of the door near a small table. Sheriff Keeder knocked on the door and a voice from inside said "hold on." (Report and Recommendation at 6.). The two men inside the apartment walked past the doorway toward the bedroom.

The officers then kicked down the door and entered the premises. Young was encountered by McGaffick and the then unknown male (Baxter) was encountered by Sheriff Keeder. Both men were ordered to the floor where they were then cuffed, patted and searched. The search of Young provided baggies and money. The initial pat down of the then unknown male, later determined to be defendant Baxter, revealed a hard object that Sheriff Keeder stated could have been a gun. A further search of the then unknown male provided a cell phone and a pack of gum taken from his right pants pocket. Young was arrested and the then unknown male was detained for officer safety.

Sgt. McDonald entered the premises and observed an over-the-counter pain killer on the table. Sgt. McDonald picked up one of the capsules which then rolled under a radio or toaster. He picked up a roll of paper towels looking for the capsule and a clear plastic package fell out of the roll of towels. The package contained a light tan powdery substance which appeared to be

heroin.  Phone contracts, razor blades and clothing were also found in the search.

Both Young and the then unknown male were taken outside.  When asked, the then unknown male stated that his name was Sonny Callaway.  Sheriff Keeder performed a driver's license check which came back without a match.  While Sheriff Keeder was trying to determine the male's true identity, he called Detective Connors.  Detective Connors suggested that Sheriff Keeder ask the male if his name was Sonny Baxter.  Sheriff Keeder asked the male if his name was Sonny Baxter.  The male then admitted that his name was Sonny Baxter.

Baxter was arrested but was not advised of his <u>Miranda</u> rights until he was taken to the sheriff's office.  <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).  After being advised of their <u>Miranda</u> rights, both Young and Baxter refused to answer questions.  <u>Id.</u>

On September 2, 2005, Detective Connors and the landlord went to the premises at the landlord's request.  Detective Connors walked around the unit while the landlord examined the premises.  Detective Connors seized certain items he found in plain view.  (Hr'g Tr., Gov't's Ex. 5.)

### III.  <u>Discussion</u>

In his first and second motion to suppress physical evidence, Young argues that: (1) the warrantless search was <u>per se</u> unreasonable; (2) there was never a valid consent to search; (3)

his detention was unlawful; and (4) the plain view doctrine does not apply.

In his motion to suppress physical evidence, Baxter argues that: (1) the warrantless search was per se unreasonable; (2) there was no valid consent to search; (3) his detention was unlawful; and (4) his arrest was unlawful.

In his motion to suppress alleged statements, Baxter argues that his alleged statements were obtained illegally because he was not informed of his rights pursuant to Miranda, 384 U.S. at 436.

The magistrate judge recommended that Young's first and second motion to suppress should be denied and that Baxter's motion to suppress statements, physical evidence and text messages should be denied.

Young and Baxter both objected to the magistrate judge's recommendation. Young objected to the following: (1) the recommendation that Young's first motion to suppress should be denied; (2) the failure to find that Grose wrote the landlord's address for Young upon vacating the apartment; (3) the failure to find that Grose had no intention of paying the August rent or the late charges; (4) the failure to find that Grose located her key to the premises by accident and thought that she had delivered her key to Young; (5) the failure of law enforcement officers to take cognizance of all of the indicia showing that Grose resided in East Liverpool; (6) the failure of law enforcement officers to take

cognizance of the fact that Grose advised law enforcement officers that she had vacated the apartment with the intent to never return; (7) the failure to find that the examination of the pill bottle was an unlawful search leading to finding the contents of the paper towel; (8) the finding that Grose could freely return to the apartment; (9) the existence of a lease; (10) the finding that Agent Walker was investigating drug trafficking in Ohio; (11) the finding that Young does not have standing as to the search of the premises; (12) the failure to consider both the abandonment of the lease and the assignment of the lease to Young; and (13) the failure to address the scope of the search authorized by the consent.

Baxter asserts in his objections to the report and recommendation that: (1) he has standing as to the search on August 26, 2005; (2) Grose did not have the authority to consent to the search and that, therefore, the consent was not valid; (3) the search of his person on August 26, 2005 was unlawful; (4) there were no exigent circumstances to support the warrantless search of the cell phone; and (5) his statements were not made during a Terry stop.

A.    Motion to Suppress Physical Evidence

Warrantless searches are per se unreasonable.  One exception to the warrant requirement is the search is made following consent by the person with interest in the property.

A warrantless consent search is invalid if an officer exceeds the scope of the consent granted. Wayne R. Lafave, <u>Search and Seizure</u> § 8.1(c) (4th ed. 2004). In third-party consent cases, more than one person may have an interest in real or personal property that the police want to search. <u>See generally</u> <u>id.</u> § 8.3-8.4. In <u>United States v. Matlock</u>, 415 U.S. 164 (1974), the court held that a warrantless search is constitutionally valid if the police obtain consent from a person who possesses common authority over the property searched. Courts have further stated that:

> [A]n individual who possesses the requisite degree of control over specific premises is vested in his own right with the authority to permit an official inspection of such premises and . . . this authority is not circumscribed by any 'reasonable expectation of privacy' belonging to co-occupants. Whether the principle is characterized as an 'assumption of risk' or a relinquishment of the 'expectation of privacy' guaranteed by the Fourth Amendment, the fact remains that where an individual shares with others common authority over premises or property, he has no right to prevent a search in the face of the knowing and voluntary consent of a co-occupant with equal authority.

<u>People v. Sanders</u>, 904 P.2d 1311 (Colo. 1955)(citing <u>People v. Cosme</u>, 397 N.E.2d 1319, 1322-3 (N.Y. 1979)). Further, a law enforcement officer does not have to bring an action to quiet title before determining who has the right to consent to a search. LaFave § 8.3(g).

When a person does not have the authority to consent, a search will be upheld if the officer reasonably (but incorrectly) believed

that the third party had common authority over the premises. <u>Illinois v. Rodriquez</u>, 497 U.S. 177 (1990).

1.   <u>August 24, 2005 Search</u>

On August 24, 2005, the police searched the premises.  The lease at the premises was a month-to-month tenancy commencing on the 15th day of every month.

Although Grose moved to her parents' home, she retained a key and was able to return to the premises without any restrictions. Grose was late in paying the August rent.  However, the landlord believed she was the only tenant.  The landlord specifically told Young that if he wanted to continue to stay at the premises, he must become a tenant by signing a lease and paying the rent.

Based upon the facts stated above, the magistrate judge recommended that Grose had the authority to give consent and that the consent was valid.  Young objects to the magistrate judge's report and recommendation.

a.   <u>Grose's Ties to the Premises</u>

This Court finds that Grose had authority to provide consent to the search of the premises because she had a valid lease, access to the premises and retained authority over the premises.

(1)  <u>Valid Lease</u>

Young argues that there was no evidence of a lease beyond May 15, 2005, and Grose had no intention of paying the rent.  This Court finds that there was a valid lease and cannot speculate as to

whether or not Grose had an intention to pay the rent. As
previously stated, Young asked Grose to sign the money order and
continue the lease in her name. (Gov't's Ex. 1). The lease was
only in Grose's name and was a month-to-month tenancy. The
landlord stated that Grose was the only tenant and that he had
called Grose once to let her know that she was late on her rental
payment. The landlord accepted her as a holdover tenant after
August 15, 2005.[3] See Bryan v. Big Two Mile Gas Co., 577 S.E.2d
258 (W. Va. 2001)(A landlord has the option to accept a tenant
wrongfully holding over after the expiration of a term and continue
to treat him as a tenant.) Accordingly, there was a valid lease
beyond May 15, 2005.

(2) Access to the Premises

Young argues that Grose used a duplicate key to gain access to
the premises. This Court finds that Young's argument that Grose
located a "spare key" by accident while cleaning her car is without
merit. (Def. Young's Objection ¶ 5 at 7.) Accordingly, Baxter's
argument that Grose had a second duplicate key is also without
merit. This Court finds that Grose had her original key to the
premises, not a duplicate key. There were three keys to the
apartment. Young, Grose and the landlord each had a key. Grose

---

[3]A "holdover tenancy" is a lease-type relationship created by
legal implication under certain circumstances, generally by the
landowner's conduct. Bryan, 577 S.E.2d at 250.

13

did find a key in her car. However, it was her primary key to the premises not a duplicate key.

Young objects to the statement that Grose freely returned to the premises. He further argues that Grose vacated the premises with no intent to return. This Court finds that Grose could and did freely return to the premises and, thus, had not vacated the premises. Grose had her original key, was presumed by the landlord to be the only tenant, had left personal bath items and towels at the premises and had been asked by Young to keep their living situation the same as it had been since they moved into the premises together. Grose also stated that she was never told by Young or anyone else that she was not permitted at the premises or had to ask permission to be permitted to enter the premises. (Hr'g Tr. ¶ 11-2, 15, 19 at 10.) She had gone to the premises on several occasions after she had moved into her parents' house but before the searches of the premises commenced.

### (3) Grose's Residence

Young argues that not only was the lease invalid but that all of the evidence indicates that, at the time of the search, Grose's residence was in East Liverpool, Ohio. While this Court agrees that there is at least some evidence that Grose resided with her parents in East Liverpool, such evidence is not determinable because a person may have several residences. Lotz v. Atamaniuk, 304 S.E.2d 20, 23 (W. Va. 1983). Accordingly, Grose can reside at

14

the premises [in Chester, West Virginia] and with her parents in East Liverpool, Ohio.

Young asserts that this case should be analyzed on the understanding that no reasonable person would hold that Grose retained a right to permit entry into the premises that she had vacated. See Georgia v. Randolph, No. 04-1067 (U.S. Mar. 22, 2006).

This case can be distinguished from Randolph. In Randolph, respondent Scott Randolph ("Scott") and his wife, Janet, separated in late May 2001, when she left her marital residence with her son to go live with her parents. Id. at 1519. In July, Janet returned to the marital residence and her husband took her son and went a neighbor's house. Id. Janet contacted the police and told them that her husband was a cocaine addict and had items of drug evidence in the house. Id. Sergeant Murry was at the house and asked Scott for permission to search, which he refused. The sergeant asked Janet for consent, which she gave. Id. Janet led the officer upstairs to a bedroom that she identified as belonging to Scott, where the officers found a drinking straw with a powdery residue.

Randolph is different than this case because in Randolph both co-occupants were physically present, with one occupant consenting to the search and the other objecting. Id.

In the present criminal action, Young was not physically present during the search, see e.g. Casteel v. Nevada, 2006 WL

798992 (Nev. 2006)("A warrantless search is valid based on the consent of one occupant, despite the physical presence of the nonconsenting occupant."), and both Young and Grose had equal access to all areas of the premises. <u>See</u> <u>Randolph</u>, No. 04-1067 (The bedroom that was searched based upon Janet's consent belonged only to Scott). Grose, a joint resident with Young, had authority to consent to a search of a premises so that the officers could investigate and terminate the commission of ongoing criminal misconduct. <u>Id.</u> This Court finds that the officers were faced not with the physical presence of an objecting occupant and both Grose and Young had equal control and access to the entire premises. Accordingly, Grose had authority to consent to the officer's search of the entire premises.

> b. <u>Young's Lack of Ties to the Premises</u>

Pursuant to the facts stated below, if Grose lacked authority to provide consent to search the premises, then Young also lacked authority.

Young argues in his objections that Grose wrote the landlord's address and gave this information to Young so he could pay the rent if he was so inclined. However, as Magistrate Judge Seibert noted, when Young expressed his desire to become a tenant of the apartment, the landlord stated that he must sign a lease and pay the rent. This Court notes that Young: (1) did not have this conversation until after the August 24, 2005 search; and (2) never

signed a lease to become a tenant nor paid any rent that was due for the period of August 15 to September 15, 2005.[4] Instead, Young asked Grose to sign the money order for the August rent and continue the lease as it had been in the past. (Hr'g Tr. ¶ 1-2, 6-7 at 11, Mar. 1, 2006.)

This Court finds that the officer's belief that Grose had authority was reasonable and Grose's consent to search was valid.

c.   Police Officer's Reasonable Understanding

When a person does not have the authority to consent, a search will be upheld if the officer reasonably (but incorrectly) believed that the third party had common authority over the premises. Illinois v. Rodriquez, 497 U.S. 177 (1990).

Detective Connors received a signed consent form from Grose. Grose stated that she had full access to the apartment. Grose never indicated that she had permanently vacated or terminated the lease. (Hr'g Tr. ¶ 16-8 at 19, Feb. 9, 2006.) Further, the landlord told Detective Connors that Grose was the only tenant on the lease.

Accordingly, even if Grose had vacated the premises, the officers believed that she had authority to consent to the warrantless search based upon the testimony of the landlord and Grose.

_____

[4]Young did not pay half of the rent to Grose for that month nor did he provide any money to the landlord even though he was residing at the premises.

17

2.  <u>Participation of Agent Walker</u>

Agent Walker was present during the search conducted on August 24, 2005.  The magistrate judge found in his recommendation that Agent Walker was a legitimate law enforcement officer participating in the investigation of Young's illegal activities.

Young asserts that Agent Walker was a civilian and was not authorized to execute a search warrant pursuant to Rule 41(c) of the West Virginia Rules of Criminal Procedure, West Virginia Code §§ 62-1A-8 and 62-1A-1, <u>et seq.</u> and 18 U.S.C. § 3105.  Young relies upon <u>Wilson v. Layne</u>, 526 U.S. 603 (1999), which held that it is a violation of the Fourth Amendment for law enforcement officers to bring civilians into a person's home during a search. Young further argues that Agent Walker was not present during the search to provide aid to a law enforcement officer for police purposes, but was there as a civilian.  <u>See</u> <u>Buonocore v. Harris</u>, 65 F.3d 347 (4th 1995.)

This Court agrees with the magistrate judge that Agent Walker was an officer aiding another officer in the August 24, 2005 search pursuant to West Virginia Rules of Criminal Procedure 41(c), 18 U.S.C. § 3105, West Virginia Code §§ 62-1A-8 and 62-1A-1, <u>et seq.</u>

Both cases cited by Young involved civilians who were not police officers.  In <u>Wilson</u>, 526 U.S. at 603 the civilian allowed into the person's home during a search was a print reporter from the *Washington Post*.  In <u>Buonocore</u>, the police allowed a corporate

security officer from Chesapeake and Potomac Telephone Company ("C&P"), where the defendant was employed, to attend the search and identify any C&P property that might be discovered. Id. at 350. In the present criminal action, Agent Walker is a full-time drug investigator with the Columbiana County Task Force in St. Clair Township, Ohio. (Hr'g Tr. at 47.) Although at the time of the search he was not a law enforcement officer in the State of West Virginia, he was the first officer to become involved in this criminal investigation. Grose discussed Young's illegal activities with Agent Walker, who then relayed them to Detective Connors. Accordingly, this Court finds that Agent Walker is not a civilian and there is no violation of Young's Fourth Amendment rights by Agent Walker's participation in the search.

    3.    August 26, 2005 Search as to Young

    Young objects to the last paragraph on page 11 of the magistrate judge's report and recommendation, which states that "Young also does not have standing as to this search of the premises." (Report and Recommendation at 11.) It is clear that the report and recommendation has a typographical error and that it is meant to say that Baxter had not lived at the premises or had been an overnight guest. Accordingly, Young's objection is without merit because the last paragraph on page 11 pertains to Baxter.

    Young further argues that the August 26, 2005 search is inadmissible because it is derivative of the previous unlawful

search on August 24, 2005.  (Def. Young's Objection at 12.)  Young

argues that the over-the-counter pill container was outside the

area permitted to be searched under the rule set forth in <u>Chimel v.</u>

<u>California</u>, 395 U.S. 752 (1969).  This case is distinguishable from

<u>Chimel</u>.  In <u>Chimel</u>, the police were armed with an arrest warrant

but no search warrant.  <u>Id.</u> at 754.  The <u>Chimel</u> court stated that

the police may conduct a warrantless search of the arrestee and the

area in her immediate control, but they may not search the entire

house without a search warrant.  <u>Id.</u> at 768.  In the present

criminal action, the police not only had an arrest warrant, but

they also had a valid consent to search the premises in Chester,

West Virginia.  Accordingly, Young's objections are without merit

and the August 26, 2005 search was valid.

    4.   <u>The August 26, 2005 Search as to Baxter</u>

A person may challenge a search of another person's residence,

even when the resident is present.  <u>See</u> <u>Minnesota v. Olson</u>, 495

U.S. 91 (1990).  In <u>Olson</u>, the Supreme Court held that an overnight

guest in his girlfriend's home could challenge the police entry of

the premises, notwithstanding the fact that the defendant did not

have a key, was not left alone and lacked control over the

premises.  <u>Id.</u>

The magistrate judge found in his recommendation that Baxter

did not have standing to object to the search of the premises

because he was not an overnight guest even though there was some evidence that Baxter had clothing at the premises.

Baxter objects to the magistrate judge's recommendation. He asserts that he has standing as an overnight guest to challenge the search of the premises in Chester, West Virginia. <u>See</u> <u>Rakas v. Illinois</u>, 439 U.S. 128 (1978)(to assert a Fourth Amendment challenge, one must establish that he or she had a legitimate expectation of privacy in the area searched); <u>Minnesota v. Olson</u>, 495 U.S. 91 (1990)(an overnight guest in a home has a legitimate expectation of privacy in the premises).

This Court agrees with the magistrate judge's recommendation that Baxter does not have standing to challenge the search of the premises.

The court in <u>Minnesota v. Carter</u>, 525 U.S. 83 (1998), held that two out-of-town guests did not have standing to challenge the search of the host's residence. In <u>Carter</u>, a police officer observed the guests bagging cocaine. <u>Id.</u> The court determined that the two guests had no standing to challenge the search because: (1) the transaction involved was purely commercial in nature; (2) the guests were on the premises for two and a half hours, which was a relatively short period of time; (3) there was a lack of any previous connections between the guests and the lessee. <u>Id.</u> The court found in <u>Carter</u> that the situation was one where the guests were simply permitted to be on the premises for a

business transaction and lacked standing to challenge the search. Id. More recently, the Supreme Court of South Carolina, in State v. Missouri, 603 S.E.2d 594 (S.C. 2004), held that a defendant who was good friends with the host, had frequently visited the apartment and spent the night several times, described the apartment as a place to "find comfort" at times, had a key to the apartment, and kept a change of clothes there, had an expectation of privacy in the apartment. Id. at 597-8. See also Olson, 495 U.S. at 91.

The facts in the present criminal action are similar to the facts in Carter, 525 U.S. at 83. In the present criminal action, Baxter had traveled from New Jersey to West Virginia to conduct business with Young. Neither Baxter nor Young asserted that the two had a social relationship. Baxter had also never been seen at the premises before August 26, 2005. On August 26, 2005, Baxter was at the premises briefly in the morning and then for an hour later that night before he was arrested. Baxter was never alone at the premises and did not have a key.

As stated earlier, before the arrest, Deputy Sheriffs Keeder, McGaffick, Stanley, Robinson, Sgt. McDonald and Officer Hissom approached the premises. Sheriff Keeder approached the door first and observed two black males to the right of the door near a small table. Sheriff Keeder knocked on the door and a voice from inside said "hold on." (Report and Recommendation at 6.) After the

officers entered the premises, they found drug evidence on the table. (Hr'g Tr. at 73, Feb. 9, 2006.) During the search of their persons, one cell phone was taken from Baxter and another cell phone was taken from Young. (Hr'g Tr. at 76.) These cell phones were registered in Baxter's name and contracts for the cell phones were found at the premises.

As the magistrate judge noted in his recommendation, Baxter had extra clothing inside the premises but there was no indication that the clothing had been there for an extended period of time or that Baxter was going to stay at the premises. Baxter also did not have any toiletries at the premises.

Accordingly, this Court finds that Baxter does not have standing because he was only in the premises for about an hour, had never visited the premises before, and had no previous social relationship with Young. There was insufficient evidence that Baxter was an overnight guest or had an expectation of privacy in the premises. Accordingly, Baxter does not have standing to challenge the search of the premises.

B.    Search and Seizure of Persons

Searches incident to an arrest are a well established exception to the warrant requirement. Michigan v. DeFillippo, 443 U.S. 31, 35 (1979).

When an officer by means of physical force or show of authority in some way restrains the liberty of a citizen, a seizure

has occurred and the Fourth Amendment is implicated. <u>Terry v.</u>
<u>Ohio</u>, 392 U.S. 1 (1968).

Suspicion is reasonable if the officer can point to some specific and articulable facts that, along with reasonable inferences from those facts, justify the intrusion. <u>See e.g.</u> <u>id.</u>; <u>INS v. Delgado</u>, 466 U.S. 210, 217 (1984). As the Supreme Court stated in <u>Illinois v. Wardlow</u>, 528 U.S. 119, 126, "<u>Terry</u> accepts the risk that officers may stop [and/or frisk] innocent people."

1.    <u>The August 26, 2005 Search as to Young's Person</u>

The magistrate judge found in his recommendation that the search of Young was necessary and valid. A search incident to an arrest is a well established exception to the warrant requirement. <u>Michigan</u>, 443 U.S. at 31. This Court finds that the search of Young's person was valid pursuant to the arrest warrant.

2.    <u>The August 26, 2005 Search as to Baxter's Person</u>

The magistrate judge found in his recommendation that the search of Baxter was lawful. Baxter objects stating that the consent to enter the premises was invalid and the arrest warrant for Young was the product of an invalid search on August 24, 2005. This Court has already found that the search on August 24, 2005 was valid and Baxter's argument that the consent was invalid is without merit. Baxter further asserts that even if the officers had been in the premises lawfully, they had no reason to stop and frisk him.

It is undisputed that there was no warrant for the arrest of
Baxter and the officers did not know who he was when he was first
found in the premises.  Baxter was with Young when the premises
were searched with a valid consent search and arrest warrant for
Young.

This Court finds that there was a basis for an investigative
stop because Grose was a reliable informant and there were
reasonable safety considerations.  Based upon Grose's testimony,
the officers found heroin during the August 24, 2005 search.
Further, based upon Grose's testimony, the officers had found
firearms and a gun case without a firearm in the bedroom two days
prior to the August 26, 2005 search.  (Hr'g Tr. ¶ 11-2 at 27.)  For
purposes of reasonable suspicion, there was sufficient indicia of
the informant's reliability.  See Adams v. Williams, 407 U.S. 143
(1972)(the court considered the tipster's information sufficiently
reliable because he had provided the police with information about
a crime on a prior occasion.)  Not only is Grose's testimony
sufficient to justify a search pursuant to Terry, but the officers
had a reasonable basis to stop and frisk for safety considerations,
based upon reasonable suspicion that Young was selling illegal
narcotics.  The officers made a common sense conclusion that the
two men were heading for the bedroom to retrieve a firearm, since
there were firearms and an empty gun case seized by the police two
days earlier.  See United States v. Cortez, 449 U.S. 411, 417

(1981)(a police officer is entitled to make "common-sense conclusions about human behavior"). Since there was a basis for an investigative stop, there was also a basis to conduct a frisk and limited search for weapons. <u>United States v. Hensley</u>, 469 U.S. 221 (1985). Accordingly, this Court finds that there was reasonable suspicion based upon the evidence already obtained for the officers to conduct an investigative search of the premises and of Baxter. <u>See</u> <u>Terry v. Ohio</u>, 392 U.S. 1 (1968); <u>Hensley</u>, 469 U.S. at 221.

    3.    <u>The August 26, 2005 Statement of Baxter</u>

On August 26, 2005, several police officers entered the premises and performed a <u>Terry</u> stop on Baxter, 392 U.S. at 1. Baxter stated that his name was Sonny Callaway. Sheriff Keeder performed a driver's license check but found no match. The officers continued to question Baxter regarding his identification.

Baxter argued that his responses to the interrogation must be suppressed pursuant to <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966). <u>Miranda</u> warnings are not required when a person is questioned during a <u>Terry</u> stop. <u>United States v. Leshuk</u>, 65 F.3d 1105, 1108 (4th Cir. 1995). The magistrate judge recommended that the motion to suppress Baxter's statements be denied. Baxter objects to the report and recommendation that his statements were made pursuant to a <u>Terry</u> stop. Baxter argues that the detention was not brief and should be considered unnecessary for a mere investigative stop and frisk.

_Terry_, 392 U.S. at 1, involved a very brief detention of a person suspected of criminal activity.  Nonetheless, there is no bright-line limitation to a _Terry_ seizure.  A seizure based upon reasonable suspicion may be permitted although it lasts longer than those that occurred in _Terry_.  See _United States v. Sharpe_, 470 U.S. 675 (1985)(the court upheld a twenty-minute detention of suspects in order to investigate the criminal activity).

In _United States v. Montoya de Hernandez_, 473 U.S. 531 (1985), the court upheld a seizure that lasted over sixteen hours.  In _Montoya de Hernandez_, a woman was suspected of concealing narcotics-filled balloons in her alimentary canal in order to smuggle them into the country.  _Id._ at 534.  The customs agents asked her to undergo an x-ray and she refused.  _Id._ at 543.  The court upheld the detention because the suspect could have had a quick determination but refused the alternative method of investigation.  _Id._  In the present criminal action, Baxter refused to provide his true identity to the police officers.  The officers had reasonable suspicion to stop and frisk Baxter.  Baxter could have had a prompt determination but refused to provide his true identity.  Baxter was arrested after he provided his true identity and was advised of his _Miranda_ rights at the sheriff's office.

This Court finds that Baxter was questioned pursuant to a _Terry_ stop and that the detention of him was reasonable in order to

investigate the criminal activity. Accordingly, Baxter's statements are admissible.

D.   September 2, 2005 Search

This Court finds that Young's objections to the September 2, 2005 search are without merit. In his objections, Young argues that the search conducted on September 2, 2005 is inadmissible because it is derivative from previous unlawful searches. (Def. Young's Objection at 14.) Young argues that the landlord cannot give consent to search the tenant's property. Chapman v. United States, 365 U.S. 610 (1961). As previously stated, Grose was the only tenant named on the lease. Young had the option to become a tenant of the premises but did not sign the lease or pay the rent in his name. Grose provided written consent to the officers to search the premises. Accordingly, the September 2, 2005 search was pursuant to a valid consensual search.

E.   Search of Cell Phones

The original warrantless search of the premises, as discussed above, was based upon a valid consent. Accordingly, this Court will not address the "fruit of the poisonous tree" argument because it is inapplicable.

The contents of a cell phone and pager are admissible under the inevitable discovery doctrine pursuant to a subsequently obtained search warrant even though the phone and pager were unlawfully searched. United States v. Morales-Ortiz, 376 F. Supp.

2d 1131 (D.N.M. 2004).  Further, <u>United States v. Parada</u>, 289 F. Supp. 2d 1291 (D. Kan. 2003), held that telephone numbers stored in the memory of a cell phone, that was lawfully seized, can be retrieved without a warrant because of exigent circumstance.  The magistrate judge found in his recommendation that the contents of the Motorola V3 cellular telephones are admissible.  Baxter and Young object asserting that the officers had enough time to seek a warrant.  Accordingly, they argue that exigent circumstances did not exist and the results of the searches should be suppressed.

This Court finds that exigent circumstances existed because the evidence could be lost if not retrieved immediately without the benefit of a search warrant.  As counsel noted, there is no specific law in the Fourth Circuit on the search of cell phones which are lawfully seized.  However, in an unpublished opinion, the Fourth Circuit held that the numbers on a pager could be obtained without a search warrant if it was incident to a lawful arrest. <u>United States v. Hunter</u>, 1998 WL 887289 (4th Cir. 1998).

The present criminal action dealt with the contents of Young and Baxter's Motorola V3 cellular telephone known as the Razer ("Razer cell phone").[5]  On a cell phone, the telephone numbers stored in the memory can be erased as a result of incoming phone calls and the deletion of text messages could be as soon as

_____

[5]The Razer is an advanced cell phone offered by Cingular Cell Phone Company.

midnight the next day.  Detective Connors stated, under oath, that his previous experience is that once the cell phone powers down evidence can be lost.  (Hr'g Tr. at 40.)  The Razer cell phone has an option called message clean-up that wipes away text messages between one and 99 days.  There is no way to determine by looking at the Razer cell phone's screen, if the message clean-up option has been activated.  If the one-day message clean up is chosen, any messages stored on the Razer cell phone will be deleted at midnight on the following day it is received.  Accordingly, this Court finds that exigent circumstances existed and the text messages retrieved from the Razer cell phones are admissible.

## IV.  Conclusion

After a de novo review, this Court concludes that the magistrate judge's recommendation is proper and that the defendants' objections to the report and recommendation lack merit, and because the remaining findings are not clearly erroneous, this Court hereby AFFIRMS and ADOPTS the magistrate judge's report and recommendation because the: (1) August 24, 2005 search of the premises was based upon valid consent; (2) August 26, 2005 search of the premises was based upon valid consent; (3) August 26, 2005 search of Young was based upon a valid arrest warrant; (4) August 26, 2005 search of Baxter was based upon a Terry stop and frisk; (5) September 2, 2005 search of the premises was based upon valid

30

consent; and (6) text messages retrieved from the cell phone are admissible.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit copies of this order to counsel of record herein.

DATED:    May 9, 2006

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE